[897 NYS2d 398]

In the Matter of CRAIG J.J. SNYDER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 14, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Ann E. Scherzer* of counsel), for petitioner.

*Ronald L. Kuby* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Craig J.J. Snyder was admitted to the practice of law in the State of New York by the First Judicial Department on March 5, 1990. At all times relevant herein, respondent has maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (Committee) seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (iii), immediately suspending respondent from the practice of law until further order of this Court based upon uncontested evidence of respondent's professional misconduct which immediately threatens the public interest.

This matter commenced with the Committee's receipt of a complaint dated June 15, 2009 filed against respondent by Christopher R. Kraft, Esq. (Kraft complaint). Kraft is the attorney for Honor Mulligan, the 88-year-old survivor of her son, William Mulligan, who in 1982 was murdered by Michael Donahue, a client of respondent.

Donahue had retained respondent to represent him in various collateral civil actions against the government, which resulted in a settlement award of $400,000 to Donahue.

By order to show cause dated November 29, 2004, the Crime Victims Board moved on behalf of William Mulligan's relatives for an injunction requiring respondent to hold the net settlement proceedings in an escrow account pending the outcome of any claims to the proceeds by the crime victims. Respondent agreed to hold the net settlement fees in his escrow account and valued that amount at $244,426.67. Accordingly, by order dated March 24, 2005, Honorable Joseph Teresi (Sup Ct, Albany County) granted the Crime Victims Board's motion for an injunction.

Kraft, on behalf of his client Honor Mulligan, commenced a wrongful death action against Donahue. Following litigation, a judgment against Donahue in the sum of $500,000 was entered on December 18, 2008 in Supreme Court, Ulster County (Henry F. Zwack, J.). Kraft sought an order modifying Judge Teresi's injunction to allow for the release of the settlement funds from respondent to Kraft's law firm in partial satisfaction of the $500,000 judgment against Donahue. In granting Kraft's motion, by order dated April 1, 2009, Judge Teresi directed respondent to issue a check payable jointly to Mulligan and to Kraft's firm as attorneys for Mulligan, in the sum of $244,426.67.

In June 2009, counsel for respondent advised Kraft that respondent had withdrawn the funds from his escrow account and that the money was no longer available to pay the judgment to Mulligan, prompting Kraft's complaint to the Committee.

The Committee obtained respondent's bank records for the period November 2004-June 2009. A review of these records shows the following: on December 6, 2004, a $400,000 deposit was made into respondent's IOLA account, from which he obtained his legal fee for Donahue's award, plus costs and disbursements, leaving a balance belonging to Mulligan of $244,426.67. By January 31, 2005, the balance in respondent's IOLA account had fallen to $183,134.84. On March 31, 2005, only seven days after entry of the injunction, the balance in the IOLA account had fallen to $85,134.84. By July 29, 2005, the balance had fallen to $271.84. Thus, Mulligan's funds were depleted by respondent in a mere eight-month period. The funds had long been depleted prior to Judge Teresi's April 1, 2009 order directing respondent to turn over the funds to Mulligan and her counsel.

The bank records showed that respondent depleted the funds primarily by writing checks to "Craig J.J. Snyder P.C." (his operating account) or to himself. A minority of checks were also drawn to the order of entities with no apparent relation to Mulligan.

By letters dated August 3, 2009 and September 25, 2009, counsel for respondent informed the Committee that because respondent was under investigation by the New York County District Attorney's Office, counsel had advised respondent not to respond to the Kraft complaint and to invoke his Fifth Amendment privilege.

Based on the bank records furnished to this Court, the September 25, 2009 letter from respondent's counsel wherein respondent invoked his Fifth Amendment privilege, and counsel's oral representation to the Committee staff that he would not oppose an interim suspension, we conclude that respondent is guilty of professional misconduct warranting immediate suspension from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (iii) (*see Matter of Bernstein*, 63 AD3d 87 [2009]; *Matter of Blau*, 50 AD3d 240 [2008]).

In the context of disciplinary proceedings, this Court has previously drawn an adverse inference against attorneys such as respondent who have invoked their Fifth Amendment privilege against self-incrimination (*see e.g. Matter of Muraskin*, 286

AD2d 186, 187 [2001]). Thus, no facts are presented to controvert the Committee's submissions (*see Matter of Dreier*, 59 AD3d 37, 38-39 [2008]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, effective immediately, until such time as disciplinary proceedings have been concluded, and until further order of this Court.

FRIEDMAN, J.P., McGUIRE, RENWICK, RICHTER and MANZANET-DANIELS, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.